353 So.2d 749 (1977)
GENERAL MOTORS ACCEPTANCE CORPORATION and Larry W. McKnight
v.
Sandra Kaye LAYTON.
No. 49735.
Supreme Court of Mississippi.
November 30, 1977.
Rehearing Denied January 18, 1978.
*751 Heidelberg, Woodliff & Franks, W. Swan Yerger, Glenn Gates Taylor, Jackson, for appellant.
Tullos & Tullos, Eugene C. Tullos, Raleigh, for appellee.
Before SMITH, LEE and BOWLING, JJ.
LEE, Justice, for the Court:
The Circuit Court of Simpson County entered judgment in favor of Sandra Kaye Layton against General Motors Acceptance Corporation (GMAC) and Larry W. McKnight, its agent, in the sum of twenty thousand dollars ($20,000) for personal injuries, and GMAC and McKnight appeal.
Appellants assign the following errors in the trial below:
(1) The verdict of the jury was against the overwhelming weight of evidence.
(2) The court erred in refusing to permit defendants to examine their own witness and refresh her memory once surprise was proved.
(3) The court erred in not requiring the best evidence of plaintiff's drug bills.
(4) The court erred in permitting plaintiff's physician to speculate about possible development of arthritis.
(5) The court erred in refusing to instruct the jury that plaintiff and her husband were on a joint adventure.
(6) The court erred in instructing the jury that as a matter of law the plaintiff was not guilty of any negligence.
(7) The court erred in its ruling on instructions concerning permanent disability, future pain and suffering and future medical expenses.
(8) The court erred in refusing to instruct the jury that it could infer that the testimony of plaintiff's absent physician would have been adverse to plaintiff.
*752 (9) The closing argument of plaintiff's counsel appealed to the passion and prejudice of the jury.
(10) The verdict was so excessive as to evince bias and prejudice on the part of the jury.

I.
Was the verdict of the jury contrary to the overwhelming weight of the evidence?
The evidence for appellee indicates that on December 5, 1972, she was riding in an automobile driven by her husband in a westerly direction on Old Highway 49 from Mendenhall to Magee, and that it approached an automobile owned by GMAC and driven by its agent, Larry W. McKnight, in an easterly direction on said highway. When the Layton automobile was approximately thirty (30) feet from the GMAC vehicle, the latter suddenly turned north across the north lane of the highway toward a private drive and the Layton vehicle collided with it, the collision occurring in the westbound lane. Layton testified that he was driving at a speed of thirty (30) to thirty-five (35) miles per hour and that he did not see any left turn signal on the GMAC automobile. McKnight testified that he saw the Layton vehicle approaching approximately one hundred yards away, he gave a left turn signal, looked down at a collection sheet on the seat of the automobile, started across the north lane and then looked up and saw the Layton vehicle almost upon him.
In addition to other grounds of negligence, the declaration charged appellants failed (1) to maintain a proper lookout for other vehicles on the highway, (2) to keep said automobile in its proper lane of traffic, and (3) to yield the right-of-way to the Layton automobile. There was a serious conflict in the evidence introduced by the parties. Such conflicts are for the determination of the jury, and this assignment of error is without merit. Powers v. Malley, 302 So.2d 262 (Miss. 1974); Travelers Indemnity Co. v. Rawson, 222 So.2d 131 (Miss. 1969).

II.
Did the court err in refusing to permit appellants to examine their own witness and refresh her memory after claiming surprise?
Margie Ellen Sullivan, who was driving her automobile on Highway 49 and was following McKnight on the occasion of the collision, was called as a witness by appellants. Prior to the trial, she told appellants' attorney that the Layton automobile was traveling at a speed of seventy (70) miles per hour. When testifying, she stated that Layton was traveling "fast," but that she could not estimate the vehicle's speed. Appellants claimed surprise and requested permission of the court to examine the witness concerning her prior statements. In the absence of the jury, Mrs. Sullivan admitted that she had told appellants' attorney the day before trial that Layton was traveling in excess of seventy miles per hour. The trial judge inquired of her whether she observed the Layton vehicle long enough to determine its speed, and she replied in the negative. The witness said that the seventy-mile-per-hour figure was a guess. Appellants contend that they merely sought to refresh her memory and not to impeach her. Dunk v. State, 84 Miss. 452, 36 So. 609 (1904). The trial judge determines the competency of a witness. Mrs. Sullivan's testimony that she did not observe the Layton automobile long enough to give an opinion as to its speed and that such opinion would be a guess disqualified her to testify about rate of speed. The trial judge correctly excluded that testimony from the jury. 32 C.J.S. Evidence § 546(53), at 236-240 (1964).

III.
Did the court err in not requiring appellee to introduce drug bills rather than oral testimony?
Appellee introduced in evidence certain medical and hospital bills. She did not offer drug bills but on direct examination testified, over objection, that she spent ninety-seven dollars fifty cents ($97.50) for drugs.
*753 Mississippi Code Annotated § 41-9-119 (1972) dispenses with the requirement of proving to be necessary and reasonable medical, hospital, and doctor bills, which were paid or incurred. That section does not reach the question presented here. The appellee testified that she knew the amount she had paid, that she had made a memorandum of the amount, that she had the bottles in which the drugs were placed, but that she did not have the bills nor did she have the memorandum. We are of the opinion that appellee could testify about the amount she spent for drugs. In addition, appellants cross-examined her as to the amount of $97.50 she spent for drugs. They introduced in evidence questions and answers of appellee on interrogatories. Interrogatory No. 11 asked appellee to itemize all hospital, medical, drug and other bills incurred by her as a result of her injuries, and she so itemized same setting out drugs at that time in the amount of sixty-four dollars seventy-five cents ($64.75). Consequently, appellants cannot complain of her testimony at trial as to the amount of drug bills paid.

IV.
Did the court err in admitting testimony of appellee's physician, Dr. Wade, about possible development of arthritis?
Dr. Frank Wade, an attending physician of appellee, was asked what effect plaintiff's knee injury (a bruise on the knee) would have as to later development of arthritis, and he stated, over objection, that "They [persons with knee injuries] are more likely to develop arthritis in joints ... it is not unusual for it to happen, but does not always happen." On cross-examination, Dr. Wade stated that he found no evidence of arthritis in plaintiff's knee. He did not testify or give an opinion that appellee would develop arthritis. The admission of Dr. Wade's testimony (an expert witness) was within the sound discretion of the trial judge. Providence Washington Ins. Co. v. Weaver, 242 Miss. 141, 133 So.2d 635 (1961).

V.-VI.
Did the court err in refusing to instruct the jury that appellee and her husband were on a joint adventure?
Did the court err in instructing the jury that appellee was not guilty of negligence as a matter of law?
Appellee and her husband were on their way to the Simpson County Courthouse to obtain a tag for Mr. Layton's vehicle. There was no business enterprise for profit involved, nor did appellee have any control or right of control over the vehicle. As a matter of law, there was no joint adventure. Sample v. Romine, 193 Miss. 706, 8 So.2d 257 (1942).
Appellants contend that there was a duty upon appellee to remonstrate or warn her husband against the manner in which he was driving the vehicle and that her failure to do so constitutes negligence on her part which required reduction of damages. They rely upon the principle stated in Chapman v. Powers, 150 Miss. 687, 116 So. 609 (1928), and McLaurin v. McLaurin Furniture Company, 166 Miss. 180, 146 So. 877 (1933). Appellee testified that her husband was driving the vehicle thirty to thirty-five miles per hour, that she was reading a letter and that she was not aware of any negligent operation of the vehicle by him. Therefore, she could not object to the manner in which her husband was driving the vehicle, and there was no duty upon her to do so. Sternberg Dredging Co. v. Screws, 175 Miss. 383, 166 So. 754 (1936). The court correctly refused the instruction on joint adventure and correctly granted the instruction that appellee was not guilty of negligence as a matter of law.

VII.
Did the court err in granting instructions on permanent disability, future pain and suffering and future medical expenses, and in refusing appellants' requested instruction that they were not elements of damage to be considered by the jury?
The court refused Instruction D-5, requested by appellants, which would have *754 instructed the jury that it could not render a verdict for appellee based on permanent disability since there was no evidence that appellee suffered permanent disability, and it granted an instruction for appellee that she could recover for future pain and suffering and future medical expenses.
The evidence is undisputed that appellee sustained a permanent scar on her face and head, that she was still taking medication, in fact, took medicine on the day of the trial, that on that day she was having pain and headaches, that she could not stand for any length of time, and could not do her household duties and other things as before the accident. There was evidence to support the instruction granted appellee, it was properly given, and the appellants' Instruction D-5 was properly refused.

VIII.
Did the court err in refusing to instruct the jury that the testimony of Dr. Frank Wade in connection with a visit on February 24, 1975 would have been adverse to appellee?
Appellee took the deposition of her principal physician, Dr. Wade, on December 5, 1975. During the course of her treatment, she was examined by Dr. George Truitt, orthopedist, and Dr. Wayne Cockrell, an associate of Dr. Wade, in the latter's presence. Neither of those physicians were called as witnesses by the plaintiff and, at the request of appellants, the court instructed the jury it was justified in finding that the testimony of such doctors would have been unfavorable to appellee. Reid v. Middleton, 241 Miss. 324, 130 So.2d 554 (1961); Gulf Refining Company v. Myrick, 220 Miss. 429, 71 So.2d 217 (1954).
Mr. Layton simply stated that his wife saw Dr. Wade on February 24, 1975, and appellee said that she had seen Dr. Wade two weeks before (February 24). No attempt was made by either witness to indicate the condition of appellee on that date or what the purpose of the visit to Dr. Wade was. It was not error for the court to refuse the requested instruction that the jury should consider Dr. Wade's testimony unfavorable to appellee as to her condition on February 24, 1975.

IX.
Did the closing argument of appellee's attorney appeal to the passion and prejudice of the jury?
In his closing argument, counsel for appellee stated: "But now they [GMAC] don't want to pay this lady. They were going after their money. And now they don't want to pay Mrs. Layton." (McKnight was turning off to collect a past-due account). Appellants contend that the comment was prejudicial because it indicated GMAC was a large corporation that forced its debtors to pay their bills, but refused to satisfy its own legal and moral obligations. Objection was made to the argument which was overruled. The statements made by counsel for appellee do not reach the extent of the remarks held prejudicial in Shell Oil Company v. Pou, 204 So.2d 155 (Miss. 1967), Mississippi Power Company v. Stribling, 191 Miss. 832, 3 So.2d 807 (1941), and Brush v. Laurendine, 168 Miss. 7, 150 So. 818 (1933). The trial judge has wide discretion in controlling the remarks and argument of attorneys, and we are of the opinion that he did not abuse his discretion in this case.

X.
Was the verdict of the jury so excessive as to evince bias, passion and prejudice?
The rule is settled that a jury verdict will not be disturbed unless it is so large as to evince bias, passion and prejudice on the part of the jury. Farmer v. Smith, 207 So.2d 352 (Miss. 1968); Peerless Supply Co., Inc. v. Jeter, 218 Miss. 61, 65 So.2d 240 (1953); J.C. Penney Co. v. Evans, 172 Miss. 900, 160 So. 779 (1935). See also Harkins v. Paschall, 348 So.2d 1019 (Miss. 1977); Morton Broiler Farms, Inc. v. Morgan, 191 So.2d 137 (Miss. 1966).
The evidence indicates that appellee sustained injuries to her chest, leg, back, knees and head, and that she had suffered considerable pain. The inference was that *755 she would continue to suffer in the future. She was nervous and irritable, had headaches, had difficulty in sleeping and walking, was unable to squat or stand for any length of time, and to perform household chores as she could prior to the accident. She sustained permanent facial scars as a result of lacerations, was confined in the hospital for eight (8) days and incurred medical expenses aggregating eight hundred thirteen dollars sixty cents ($813.60). The question of damages is within the province of the jury, and we are unable to say that the verdict here was so large as to indicate bias, passion and prejudice on the part of the jury.
For the reasons stated, the judgment is affirmed.
AFFIRMED.
PATTERSON, C.J., INZER and SMITH, P. JJ., and ROBERTSON, SUGG, WALKER, BROOM and BOWLING, JJ., concur.