This tort case arising out of an intersectional vehicular collision was brought by appellee (plaintiff), McDuff, against the appellant (defendant), Capital, and its truck driver agent, Meadows. A jury verdict in the amount of $50,000 was returned in favor of appellee as against Capital Transport only. We affirm. *Page 660 
The controlling issue is: Where a master and servant are made joint defendants to a suit based solely on the servant's tortious conduct, can a verdict against the master only be upheld?
Scene of the accident injuring appellee on January 24, 1972, was the intersection of U.S. Highway 61 and the old Mississippi River bridge just south of Vicksburg. Admittedly, the negligence of Meadows, the driver of Capital's Mack truck filled with 8,000 gallons of gasoline, was the sole negligence complained of and the jury was so instructed. Appellee's version was that he entered the intersection (headed east) from a stopped position after the traffic signal facing him turned green. His case was based upon evidence that appellant's driver (headed south on Highway 61) ran a red light and hit appellee. Truck driver Meadows said he lawfully entered the intersection on a green light, and that the cause of the collision was appellee's "jumping" his light and entering the intersection without looking.
On a substantial issue of material fact the case was submitted to the jury by instructions on the negligence of the agent Meadows and the liability of Capital "for the negligence, if any, of its driver, Jim Meadows, if he were operating his truck within the scope of his employment." The jury's verdict was:
 "We, the jury, find for the Plaintiff, Linn W. McDuff, against the Defendant Capital Transport Company, Inc. and assess his damages at $50,000."
The verdict was silent as to the co-defendant Meadows, the driver agent. In the trial court's judgment entered against Capital was an adjudication that:
 "No verdict having been rendered against the Defendant, Jim H. Meadows, judgment is hereby rendered in favor of the Defendant Jim H. Meadows and this cause is hereby dismissed with prejudice as to Jim H. Meadows."
Capital filed a Motion for Judgment Notwithstanding the Verdict. The motion asserted that exoneration of the agent from negligence (when the only negligence charged against Capital arose out of the acts of its agent Meadows), should also exonerate the principal, Capital. Capital also moved for a new trial, but both motions were overruled. No appeal was taken by plaintiff (appellee) from the judgment in favor of Meadows.
 I.
For some time it has been the established law in this state that a case will not be reversed simply because a master is held liable where the servant is exonerated. Should it be admitted (for discussion purposes) that the verdict is irregular and that under the doctrine of respondeat superior the jury should have returned its verdict against both the master and the servant, such a result is no valid argument to deprive the appellee of the verdict which he did obtain. Gulf Refining Co. v. Myrick,220 Miss. 429, 71 So.2d 217 (1954); Rawlings v. Inglebritzen,211 Miss. 760, 52 So.2d 630 (1951); I.C.R.R. v. Clark, 85 Miss. 691, 38 So. 97 (1905).
In a 1971 case, D.W. Boutwell Butane Company v. Smith,244 So.2d 11 (Miss. 1971), this Court refused to set aside a jury verdict rendered against the master only. There the master's liability depended solely upon the negligence of its co-defendant and servant who was not included in the judgment. Boutwell is strikingly similar to the present case and we think the result reached therein was correct. Here as in Boutwell the evidence shows that the plaintiff was injured as the direct result of the servant's negligence which was imputed to the master.
It is argued that the rule in this jurisdiction which permits a verdict and judgment against the master only when both the servant and master are sued jointly is contrary to the great weight of authority. *Page 661 
We are urged to overrule the cases cited above and no longer permit such a verdict and judgment against the master only.
While Mississippi may, in a sense, be said to be in the minority on this question, this state has a statute, Mississippi Code Annotated section 11-3-37 (1972) which places the appellant here in a different posture from that which he would occupy in other states having no such statute. The statute has been in force since the Code of 1880 and a portion of it reads:
 [O]ne of several appellants shall not be entitled to a judgment of reversal because of an error in the judgment or decree against another, not affecting his rights in the case.
Since just after the turn of the century the quoted language as spoken by the legislature has been construed by this Court, in an unbroken line of cases, to mean that a master, such as appellant here, cannot complain of a verdict against him only. I.C.R.R. v.Clark, supra; Boutwell, supra. Knowing of our construction, the legislature has not seen fit to alter or repeal the statute.
Even if we had no such statute, the appellant cannot be logically heard to say that the judgment must fail merely because the jury wrongfully omitted its servant (truck driver) from the verdict. Of what avail should it be to appellant that its co-defendant (servant) was so fortunate as to be let out or even given a windfall? The appellee (plaintiff) is the only one who has posture to raise such a complaint and he has not cross-appealed. In this regard, rather than concluding the jury exonerated the truck driver, it is equally logical, if not more so, to conclude that the jury found him guilty of negligence. Otherwise, the verdict could not be explained and the verdict of a jury must be accorded the presumption of rightfulness. Appellant argues that the jury exonerated the driver and erred in not exonerating appellant. Conversely (had he cross-appealed) appellee could make the equally valid argument that the jury erred not in returning the verdict against appellant but by its failure to return a verdict against the truck driver. We deem it inappropriate and unnecessary to second guess the jury and say what it intended to accomplish by naming only appellant in finding for appellee.
Even though appellant and its servant, the truck driver, were not joint tortfeasors, they are jointly and severally liable. The appellee could have taken a nonsuit at any time before the case was submitted to the jury. As was said by Griffith, J., in the Court's opinion in Thomas v. Rounds, 161 Miss. 713, 137 So. 894
(1931):
 Appellee therefore could have sued appellant, Thomas, alone, and for the same reason may, as she did, take judgment alone against him. The doctrine in its practical application, in the matter of the entry of judgments, has been carried even further than is here involved, as may be seen in Illinois Cent. R. Co. v. Clarke, 85 Miss. 691, 38 So. 97, and in St. Louis S.F.R. Co. v. Sanderson, 99 Miss. 148, 54 So. 885, 46 L.R.A. (N.S.) 352. (161 Miss. at 718-19; 137 So. at 894.)
To rule that the verdict and judgment against Capital should be reversed because the jury may have erred as to the truck driver would compound the error. It can hardly be urged as a legal principle that the end justifies the means or that two wrongs make a right. We are not willing to pyramid one error on top of another to reach a result desired by a litigant even though its co-defendant was not literally held liable by the jurors on account of apparent lenity or failure to speak their real conclusions.
In its scholarly brief Capital urges that Myrick, supra,
should be expressly overruled and that clarification should be made of Boutwell, supra. Interesting here is the fact that at the trial level Capital made no objection to appellee's instruction *Page 662 
which expressly authorized the jury to find against Capital only. Rather than unduly monitoring the jury, or second guessing it, or prospectively ruling that a jury cannot find against the master only as was done in this case, our task as an appellate court is to determine whether or not the verdict against Capital only was justified upon the law and the evidence. We conclude the record establishes such justification on the law and evidence notwithstanding Capital's truck driver could have justly suffered a verdict against him.
 II.
The only other assignment of error which we reach is the argument that the amount of the $50,000 verdict included punitive damages and could not be justified on the basis of actual damages alone.
According to the record, the appellee established over $3,000 expenses related to his hospitalization, doctor and medical bills. His spleen was ruptured, necessitating its surgical removal. As a result of the splenectomy, blood filled his abdominal cavity, requiring that it be periodically cleaned out. In addition to this, he had five ribs fractured in the accident as well as a blood clot in his left lung. Appellee's physician, Dr. McPherson, testified that he was in constant and severe pain, made more intense by being required to clear his lungs by coughing as much as possible in order to avoid the danger of pneumonia. The pain and agony suffered by the appellee was so excruciating that in order to comfort him he was administered morphine, phenaphel, and dilaudid.
While the amount of the verdict may be in excess of what this Court would have rendered, we cannot say that it was not supported by the evidence, or that it was not responsive to the evidence, or that it was so excessive as to indicate either bias or prejudice on the part of the jury. We do call to the attention of trial judges and attorneys that it would be appropriate (in cases where both actual and punitive damages are sought) to insure that jury verdicts reflect precisely the amount of actual damages and the amount of punitive damages awarded. In such cases the jury should be instructed to cause their verdict to reflect separate amounts for actual and punitive damages. This would obviously have the salutary effect of making lighter the burden of this Court (and trial courts) when considering questions related to the adequacy, excessiveness, or validity of jury verdicts.
Affirmed.
The case was considered by a conference of the Judges en banc.
GILLESPIE, C.J., RODGERS, P.J., and INZER and WALKER, JJ., concur.
SUGG, PATTERSON, SMITH and ROBERTSON, JJ., concur in part and dissent in part.